NEWBURYPORT SOCIETY FOR THE RELIEF OF AGED WOMEN *vs.* PHILIP E. NOYES, administrator, & others.

Essex. January 2, 1934. — September 12, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & FIELD, JJ.

*Equity Pleading and Practice*, Appeal. *Contract*, Validity, Consideration. Assignment. *Equity Jurisdiction*, Equitable assignment, Specific performance.

Where, in the determination by this court of an appeal from a final decree in a suit in equity, it appears that the evidence at the hearing of the issues by the trial judge was fully reported and that their determination did not depend upon the credibility of witnesses but upon what were proper inferences to be drawn from testimony which was not in substantial controversy, and upon the governing principles of law, no deference is due to the decision of the trial judge.

A woman sixty-six years of age, who had little or no property, upon being accepted in 1926 as an inmate of a home maintained by a charitable corporation for women in reduced circumstances and not under sixty years of age who had no relatives responsible for their support, executed and delivered an instrument under seal in which she acknowledged having been received as a beneficiary in the home, agreed to its

by-laws and promised to promote the harmony of the household.  It further was provided in the instrument, "in consideration of the care and expense of my maintenance and support in the Home, all my real and personal estate now or hereafter acquired, I hereby agree to, and do, convey, transfer and deliver" to the corporation, and also that she agreed "to give the said Home any further instruments necessary to make good title."  The contract was entered into fairly and openly.  Four years later she died.  During the last three months of her life she was seriously ill and was provided by the corporation with a special nurse.  One month before her death a cousin died intestate.  He had not known of the contract which she had made with the corporation.  Because of her illness, those in charge of the home did not inform her of his death.  Her share of his estate amounted to about $4,000.  The services rendered to her by the corporation were nearly commensurate with that amount.  A suit in equity by the corporation against the administrator of the estate of the woman to compel specific performance of the contract by way of transfer to the plaintiff of the woman's interest in the cousin's estate was dismissed.  Upon appeal by the plaintiff, it was *held*, that

(1) The promise sought to be enforced was supported by consideration;

(2) The contract was not in contravention of public policy, was not unconscionable, and was valid;

(3) In the circumstances, the contract was enforceable in equity;

(4) The decree dismissing the bill must be reversed and a decree entered for the plaintiff.

BILL IN EQUITY, filed in the Superior Court on March 11, 1931, and described in the opinion.

The suit was heard by *Gibbs*, J.  The evidence, which was reported, is described in the opinion.  A final decree dismissing the bill was entered.  The plaintiff appealed.

*P. I. Lawton*, for the plaintiff.

*E. E. Crawshaw*, for the defendants.

RUGG, C.J.  The plaintiff is a charitable corporation maintaining in Newburyport a home for women not under sixty years of age in reduced circumstances who have no relatives responsible for their support.  Florence A. Noyes became an inmate of that home in May, 1926, when she was about sixty-six years of age.  She had little or no property.  On her admission she executed an agreement under seal whereby she acknowledged having been received as a beneficiary in the home of the plaintiff, agreed to its by-laws and promised to promote the harmony of the household, "and in consideration of the care and expense of my

maintenance and support in the Home, all my real and personal estate now or hereafter acquired, I hereby agree to, and do, convey, transfer and deliver to the Home for Aged Women in Newburyport. I also, agree to give the said Home any further instruments necessary to make good title." She continued to be an inmate of the home from her admission until her death intestate in May, 1930. She was furnished by the plaintiff with board, room and nursing. During her last illness of about three months she was provided also with a special nurse. On April 11, 1930, Francis A. Noyes, her cousin, died intestate. Florence A. Noyes was one of his heirs and entitled to one third of his estate. There was no evidence that he had any knowledge of the agreement between the plaintiff and his cousin. He had been friendly with this cousin and frequently visited her at the home. Those in charge of the home thought best in her interests not to inform her of his death because she was and continued to be seriously sick. He left an estate consisting of both real estate and personal property valued at about $12,000 and her share in it was worth in the vicinity of $4,000. Florence A. Noyes died without making any transfer of her interest in this estate. This suit is brought against her administrator and her heirs at law to compel a transfer to the plaintiff of her interest in the estate of this cousin by way of specific performance of the sealed agreement already recited so far as material.

The trial judge granted some requests for rulings and denied others, filed a brief finding of facts and ordered the entry of a decree dismissing the bill. The plaintiff appealed. All the evidence is reported. There is little if any conflict in the testimony. It was not questioned that the plaintiff maintained a good home and that Florence A. Noyes while an inmate was well cared for. The decision of the issues raised depends not upon the credibility of witnesses but upon proper inferences from testimony not in substantial controversy and upon the governing principles of law. In these circumstances no deference is due to the decision of the trial judge. It is the duty of this court to draw its own inferences, and to decide the case according to its

own judgment as to facts and law. *Poland* v. *Beal*, 192 Mass. 559, 561. *Old Corner Book Store* v. *Upham*, 194 Mass. 101, 106. *Mansfield* v. *Wiles*, 221 Mass. 75, 84.

It is plain that the contract here sought to be enforced was entered into fairly and openly. It was not obtained by oppression or by taking any advantage of the necessities of Florence A. Noyes. Presumably she fully understood its terms and executed it freely. It thereby assured to her valuable privileges for the rest of her life. It was reasonable in purpose. There was no element of wager about it. She entered at once into the enjoyment of the fruits of the contract by becoming an inmate of the home with all accompanying benefits. The nature of the contract was in direct promotion of the charitable purposes for which the plaintiff was organized. To afford support for the aged poor of deserving habits of life is in the interest of the public weal. The promise of the plaintiff to provide suitable support and care implied from the acceptance of the agreement signed by Florence A. Noyes followed by its actual performance for several years constituted sufficient consideration for the agreement. The instrument was under seal, which of itself imports consideration. The consideration appears to have been adequate. According to testimony the actual commercial value of that which was furnished by the plaintiff to her does not fall far short of the amount likely to be received from the enforcement of the contract. It appears to have been fair in its terms in the light of subsequent events. The service rendered by the plaintiff seemingly is nearly commensurate with the amount here sought. In these particulars, it partakes of the nature of contracts which commonly would be enforced. *Mills* v. *Smith*, 193 Mass. 11, 17. *Kaplan* v. *Suher*, 254 Mass. 180, 185. *Sullivan* v. *Roche*, 257 Mass. 166. *Snay* v. *Lovely*, 276 Mass. 159, 165. The fairness of the contract is not affected by the circumstance that under the rules of the plaintiff any inmate might be asked to leave if not conforming to the requirements established for the orderly administration of the home. *Gooch* v. *Association for Relief of Aged Indigent Females*, 109 Mass. 558. *Grosvenor* v.

*United Society of Believers,* 118 Mass. 78. Failure to co-operate for the general welfare would be a reasonable ground for refusal further to entertain an inmate.

Upon the strict principles of the common law an assignment of this nature might not be regarded as valid. The subject of the assignment might be treated as a mere possibility not coupled with a present interest and therefore not ground for an action at law. Commonly one cannot sell that which he does not own. *Citizens Loan Association* v. *Boston & Maine Railroad,* 196 Mass. 528, 531. *Taylor* v. *Barton Child Co.* 228 Mass. 126, 129, 130, and cases reviewed. *Parsons* v. *American Agricultural Chemical Co.* 280 Mass. 424.

The interest of Florence A. Noyes in the estate of her cousin was not so intangible as to be incapable of equitable assignment. This is shown by numerous cases holding that an assignment by an heir upon terms fair and reasonable with the knowledge and assent of the kinsman from whom the property is inherited is of such nature as to be valid. *Fitch* v. *Fitch,* 8 Pick. 480, 483. *Trull* v. *Eastman,* 3 Met. 121, 123. *Jenkins* v. *Stetson,* 9 Allen, 128, 132. To the same effect in substance is *Gadsby* v. *Gadsby,* 275 Mass. 159, 165. It is not so shadowy and insubstantial as not to be susceptible of transfer by written instrument.

Contracts bearing some superficial resemblance to the one here in issue have been condemned upon considerations of public policy. Where a necessitous or profligate prospective heir makes a contract with a money lender, pledging his possible future inheritance for present cash without disclosure to the father or other relation, it is held to be a public mischief which the law will not sanction. This is on the ground that such a contract is a fraud or deceit so that next of kin are "influenced to leave their fortunes to be divided amongst a set of dangerous persons and common adventurers, in fact, although not in form." Further grounds stated are that such contracts tend to corrupt the moral habits of the citizens and constitute mere wagers upon the life of kinsmen by the expectant heirs. *Boynton* v. *Hubbard,* 7 Mass. 112, 119. That how-

ever was an action at law. No principles of equity were involved. That decision was rendered in 1810, before there had been much development of equity in this Commonwealth. Some of its expressions may have been affected by that circumstance. The principles there elaborated have been followed in a proceeding in equity to restrain the enforcement of a particularly obnoxious and hard bargain extorted from an improvident expectant heir. *Earl of Aylesford* v. *Morris*, L. R. 8 Ch. 484. The principle is there demonstrated to be a salutary one to retain in the jurisprudence of a country for application to appropriate cases. The principle of *Boynton* v. *Hubbard* is not applicable to the facts of the case at bar. The contract between the plaintiff and Florence A. Noyes, as has been pointed out, was fair and reasonable in terms. Its design was to effectuate a laudable and beneficent purpose shared by both parties. It does not work hardship upon anybody in respect to the events which have come to pass. It has the appearance now of doing a close approach to abstract justice between the parties. Taking into account any element of risk, the plaintiff has given full value for all it may receive. There is nothing about the bargain in contravention of public policy. It was not unconscionable. It was not obtained by unethical means. It does not savor of weakness on one side or extortion on the other side. The single circumstance that the kinsman, from whose estate has come the property, did not know of the terms of the contract does not stamp it as invalid when every other factor connected with it is fair and reasonable and based upon adequate consideration.

Whether such a contract would be enforced if in the light of all the circumstances it appeared to operate unfairly or unjustly and not in conformity to that which right minded people would naturally desire is not now presented for decision. Courts would not be likely to enforce any contract which has elements of fraud or oppression. Specific performance will be ordered only upon equitable grounds in view of all the conditions surrounding the particular case. *Florimond Realty Co. Inc.* v. *Waye*, 268 Mass.

475, 478. Compare *Baltimore Humane Impartial Society* v. *Pierce*, 100 Md. 520, 527.

We are of opinion that upon the facts here disclosed the plaintiff is entitled to prevail. *Gadsby* v. *Gadsby*, 275 Mass. 159. This conclusion is supported by the well reasoned decision of *Fidelity Union Trust Co.* v. *Reeves*, 96 N. J. Eq. 490, affirmed on opinion below in 98 N. J. Eq. 412. It is not out of harmony with *Order of St. Benedict of New Jersey* v. *Steinhauser*, 234 U. S. 640.

There are numerous decisions in other jurisdictions upholding assignments upon fair and reasonable terms by expectant heirs of their future interest without the knowledge or assent of their ancestor or kinsman. *Beynon* v. *Cook*, L. R. 10 Ch. 389. *Judd* v. *Green*, 45 L. J. Ch. (N. S.) 108. *Flower* v. *Buller*, 15 Ch. D. 665. *Bridge* v. *Kedon*, 163 Cal. 493. *Keys* v. *Keys*, 148 Md. 397. *Steele* v. *Frierson*, 85 Tenn. 430. *Hale* v. *Hollon*, 90 Texas, 427. It is not necessary to pass upon or to discuss that question or to determine how far it may be covered by *Boynton* v. *Hubbard*, 7 Mass. 112. This decision is confined to the facts here disclosed. The requests for rulings need not be examined.

Decree reversed and decree to be entered in favor of the plaintiff. The terms are to be fixed in the Superior Court.

*Ordered accordingly.*